IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SERVERSIDE GROUP LIMITED, et al., :
:
        Plaintiffs, :
:
        v. : Civil Action No. 11-559-RGA
:
CPI CARD GROUP - MINNESOTA INC., :
et al., :
:
        Defendants. :

## MEMORANDUM OPINION

Karen E. Keller, Esq., Wilmington, Delaware; Charles Steenburg, Esq. (argued), Boston, Massachusetts, for Plaintiffs.

David Bloch, Esq. (argued), San Francisco, California, for CPI Defendants.

Kenneth Dorsney, Esq. (argued), Wilmington, Delaware, for T8 Defendants.

February 17, 2012
Wilmington, Delaware

ANDREWS, U.S. DISTRICT JUDGE:

This is a patent infringement case. The plaintiffs have sued fifteen defendants. The plaintiffs have alleged that the defendants infringe two patents held by the plaintiffs. The patents relate to "computerizing card production equipment." Some of the defendants, who are competitors with each other, have created the accused infringing products, some of which are described as MyPhotoCard, Picture My Card, Design Your Own Card, CreataCard, and Cre8 My Card. The other defendants are customers of the manufacturing defendants.

Two groups of defendants have filed various motions to dismiss for lack of personal jurisdiction, motions to sever, and motions to transfer. One group of six, the CPI group (consisting of CPI Card Group – Minnesota, Inc., CPI Card Group – Colorado, Inc., PSCU Financial Services, Anheuser Busch Employees Credit Union, Neighbors Credit Union, and The Members Group, Inc.) is alleged to have created or used a technology (MyPhotoCard or Design Your Own Card) originating with either or both CPI Card Group – Minnesota and CPI Card Group – Colorado. The CPI group wants to transfer the claims against its members to the District of Colorado. A group of two, the T8 group (consisting of Tactical 8 Technologies, LLC (d/b/a T8 Webware) and Bank Iowa Corporation) is alleged to have created or used the Cre8 My Card. The T8 group wants to transfer the claims against its members to the Northern District of Iowa.

For the reasons that follow, I conclude that the plaintiffs have not demonstrated that personal jurisdiction exists over five of the six CPI defendants and the T8 group. The plaintiffs have requested the opportunity to take jurisdictional discovery. I will deny that request. While I further conclude that at least one of the CPI defendants will be transferred to the United States

District Court for the District of Colorado, I will delay doing so in the interest of the orderly administration of justice, as further explained below. I will transfer the case against the T8 group to the Northern District of Iowa, pursuant to 28 U.S.C. § 1406(a).

The two plaintiffs are an English company and a New York corporation. They do not have any business operations in Delaware. They do have customers in Delaware.

All but one of the CPI group, and both of the T8 group, are not Delaware corporations[1] and do not have any places of business in Delaware. One of the CPI defendants, CPI Card Group – Minnesota, Inc., is a Delaware corporation with a principal place of business in Minnesota.

The two patents held by the plaintiffs are very similar. The first claim of each patent is an invention of "Computerized financial transaction card production equipment operable to apply one or more personalized images to a financial transaction card." The Abstract of each patent describes one embodiment as being a "method for applying a personalized image to a financial account access means corresponding to a financial account of a customer." The patents could be fairly characterized as describing apparatus and methods that would permit a bank or other financial institution to offer customers the opportunity to obtain, over the internet, a credit or

---

[1] CPI Card Group – Colorado, Inc. is a Colorado corporation with its principal and only place of business in Colorado. (D.I. 11, ¶¶ 2 & 3). The Members Group, Inc. is an Iowa corporation with its principal place of business in Iowa. (D.I. 12, ¶ 2). PSCU Financial Services is a Florida corporation with its principal place of business in Florida. It also has employees in Michigan and Arizona. (D.I. 15, ¶¶ 2-4). It does not have a place of business in Delaware, but does have three employees in Delaware. (*Id.*, ¶ 6). Anheuser Busch Employees Credit Union is a Missouri corporation with its principal place of business in Missouri (D.I. 13, ¶¶ 2 & 3), and has a place of business in Newark, New Jersey. (D.I. 1, ¶ 14). Neighbors Credit Union is a Missouri credit union with its principal place of business in St. Louis, Missouri. (D.I. 16, ¶¶ 1 & 2). Tactical 8 Technologies is an Iowa limited liability company having its only place of business in Iowa. (D.I. 40, ¶ 2). Bank Iowa Corporation is an Iowa corporation with its principal and only place of business in Iowa. (D.I. 41, ¶ 2).

debit card with a picture of the customer's choice on the card.

The Complaint, for personal jurisdiction, alleges that "Defendants have made, used, sold, and/or offered for sale infringing technology in Delaware." (D.I. 1, ¶ 21). In the more specific infringement allegations, the Complaint alleges that four of the CPI group and one of the T8 group "market" "financial transaction card customization platform[s]" to "credit unions and other financial institutions." (D.I. 1, ¶¶ 27, 41, 71). The Complaint alleges that the other two of the CPI group and the other member of the T8 group use the platforms to "allow their customers to personalize their credit cards." (D.I. 1, ¶¶ 47, 51, 75).

For personal jurisdiction to exist over the non-resident defendants, the plaintiffs must show, with reasonable particularity, that the Delaware long arm statute confers jurisdiction, and that the exercise of jurisdiction under the long arm statute is constitutional under a due process analysis. *See TriStrata Technology, Inc. v. Emulgen Labs., Inc.*, 537 F.Supp. 2d 635, 638 (D.Del. 2008).

The plaintiffs do not claim that this Court has "general jurisdiction" over the defendants (other than CPI Card Group -Minnesota). Instead, the plaintiffs claim only that "specific jurisdiction" exists under the Delaware long arm statute, 10 Del. C. § 3104(c)(3). (D.I. 86, p.5). The long arm statute, in relevant part, provides: "As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: . . . Causes tortious injury in the State by an act or omission in this State."

The plaintiffs assert that patent infringement is a tortious act, and that it therefore follows that jurisdiction exists under § 3104(c)(3). The long arm statute requires both an "act or

-4-

omission" occurring in Delaware, and "tortious injury" occurring in Delaware. *See TriStrata,* 537 F.Supp.2d at 640. The parties dispute whether there were acts in Delaware.[2] The plaintiffs' complaint makes boilerplate allegations that each of the defendants "have made, used, sold, and/or offered for sale infringing technology" in Delaware. The issue having been joined, however, the plaintiffs need to show sufficient facts to establish that jurisdiction exists. *See id.* at 639.

I consider first whether there was an act committed in Delaware. In relation to the CPI group, the plaintiffs cite statements made by the defendants on their websites to the effect that they are nationwide full-service organizations. The plaintiffs also cite more specific references to the platforms that are at issue in this case. There is a significant gap between the plaintiffs' evidence and their jurisdictional theory. The jurisdictional theory is that the defendants "sold" or "offered to sell" the platforms in Delaware; the plaintiffs do not rely upon the claim that any of the defendants "made" or "used" the platforms in Delaware. (D.I. 46, pp. 7-8; D.I. 58, pp. 5-7; D.I. 68, p. 76). Absent from any of the many exhibits provided by the plaintiffs is any evidence of the sale of a platform by any of the defendants to anyone in Delaware, or any evidence of an offer to sell a platform to anyone in Delaware (or, indeed, to anyone anywhere). An "offer to sell" means something more than promotion of a product. *See Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000) ("offer to sell" defined by "norms of traditional contract analysis"); *3D Sys. Inc. v. Aarotech Lab. Inc.*, 160 F.3d 1373, 1378-79 (Fed. Cir. 1998) (price quotation letters constituted "offer to sell"). The marketing evidence submitted by plaintiffs does

---

[2] It makes little sense to consider "omissions" as being the basis for a claim of infringement. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 & n. 25 (Fed. Cir. 1994).

-5-

not constitute evidence of an "offer to sell."[3]  The plaintiffs also rely upon language in *TriStrata Technology, Inc., v. Emulgen Labs., Inc.*, 537 F.Supp.2d 635 (D.Del. 2008), but I think *TriStrata* is fairly distinguishable. The key fact there was that four of the infringing items had actually been sold in Delaware.  That fact alone demonstrated an "act" and "tortious injury" in Delaware.

The CPI group has submitted evidence on the jurisdictional issue.  Much of the evidence could be characterized as showing why general jurisdiction over the defendants does not exist. CPI Card Group – Colorado submitted evidence that it has not sold any of the infringing platforms to a Delaware-based business.  (D.I. 11, ¶ 17).  CPI Card Group – Minnesota submitted evidence that it is not involved at all with the infringing platform.  (D.I. 17, ¶ 5).  The Members Group submitted evidence that it does not have "any clients that are domiciled in Delaware." (D.I. 12, ¶ 6).  Two of the remaining defendants are credit unions and there is no evidence that they sell the platform to anyone.  The CPI group's main argument, however, is simply that the plaintiffs have failed to provide any evidence to support jurisdiction.

It is apparent that the plaintiffs scoured the internet looking for evidence to support personal jurisdiction over the CPI group.  If a Delaware-based financial institution had contracted

---

[3] Thus, advertisements that are in trade magazines that circulate in Delaware (D.I. 47-3 & 47-4), where the advertisements extol the benefits of the platform and invite a call "for more information" are not an offer to sell under a contract analysis.  A webinar put on by one of the defendants that will discuss the advantages of personalized cards including "insight on offering the [defendant's] MyPhotoCard product to cardholders," (D.I. 47-10) is not an "offer to sell." Interactive websites offering the opportunity to "design your own card and relive your favorite memories every time you shop!" (D.I. 47-14) is not an offer to sell the platform.  The evidence does not even suggest it is an offer to sell anything.  An interactive website that includes the opportunity to get a personalized credit card for $9.95 (D.I. 47-18) is an offer to sell, but it is not an offer to sell the platform.

-6-

with a CPI group defendant to use its platform technology, the fact that the Delaware-based financial institution had done so would have undoubtedly been revealed, if not advertised, by the financial institution offering the service, and I would have expected the webpage of the Delaware-based financial institution to have been provided. The absence of such evidence is, in my opinion, fairly compelling that the CPI platform technology has not been sold to any Delaware financial institution.

In relation to the T8 group, the plaintiffs argue that one defendant "aggressively markets" the technology and that the CEO reported that there was "interest [in it] from 10 institutions throughout the U.S." The defendant Tactical 8 Technologies attended a trade show at which "Delaware-based banks and card issuers" were also in attendance. (D.I. 58, pp. 4-5.).[4] There is nothing in plaintiffs' argument where they allege any sale or offer to sell to a person or entity in Delaware.

The T8 group has submitted evidence on the jurisdictional issue. Its CEO states it has contracted with financial institutions in eight named states to use the platform technology. (D.I. 40, ¶ 7). None of the states is Delaware; the closest state is Iowa. The CEO of Bank Iowa Corporation explains that its business is in Iowa, and that it does not derive any revenue from Delaware. (D.I. 41, ¶¶ 2, 5, 7; D.I. 66, ¶¶ 12, 13, 14).

The plaintiffs' argument that they have shown the T8 group defendants committed an act of patent infringement in Delaware is weaker than their argument about the CPI group

---

[4] The plaintiffs also cite evidence of events occurring in November 2011, which postdates this lawsuit by five months. While the particular evidence cited is not probative, even if it were, the existence of jurisdiction at the time of the suit cannot be conferred by acts occurring after the suit was filed.

defendants. While the plaintiffs' assertions are similarly insufficient in regard to both groups, the T8 group has made a stronger affirmative case that it is not subject to this Court's jurisdiction.

I consider second whether there was tortious injury in Delaware. Tortious injury would certainly have occurred if there were infringing sales in Delaware. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994).[5] Since there is no evidence that there has been a sale, or an offer to sell, in Delaware, there is also no tortious injury in Delaware.

In response to the CPI group's motion, the plaintiffs make a footnote request for "jurisdictional discovery," stating without citation to authority that they should be allowed to take such discovery to probe various "inconsistencies" in the record. (D.I. 46, p.6, n.5). The "inconsistencies" they name are irrelevant to the issue of specific jurisdiction. The request for jurisdictional discovery was renewed without elaboration during oral argument. (D.I. 68, p. 38). I cannot find that the plaintiffs have waived the right to request jurisdictional discovery, *see Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 & n.3 (3d Cir. 1994) (holding that a similarly modest request sufficed), but whether to grant the request is committed to my discretion. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003). Thus, as to the CPI group, I take into account a number of considerations, including (1) the only specification of requested discovery is irrelevant to the jurisdictional issue, (2) the defendants in the CPI group that actually sell the platforms[6] have denied selling them in Delaware, and (3) the lack of

---

[5] *Beverly Hills* thus undermined the rule advanced in an earlier case that, "The situs of the injury of patent infringement . . . is the place of the patent holder's residence." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1468 (D.Del. 1991).

[6] Two of the CPI group are credit unions and there's no hint that they sell platforms in Delaware or anywhere else.

-8-

submitted evidence that some Delaware-based financial institution is offering personalized credit or debit cards that appear to be based on the defendants' products. There is no reasonable basis to believe the discovery is likely to be productive.[7] Thus, as to the CPI group, I will deny the plaintiffs' request for jurisdictional discovery.

In response to the T8 group's motion, the plaintiffs make a developed argument for jurisdictional discovery and propose 32 pages of discovery, consisting of depositions, requests for production, and interrogatories, to be directed to the T8 group. (D.I. 58, pp. 10-12; Exhibits P - U). Only one request for production seems relevant to the issue of specific jurisdiction – D.I. 59, p.66, Request #9 – and the more direct and relevant questions, such as "Have you sold a platform to a business in Delaware? Have you offered to sell a platform to a business in Delaware?" – are not proposed. Thus, as to the T8 group, I take into account a number of considerations, including (1) the great bulk of the specified discovery is irrelevant to the jurisdictional issue, (2) the defendant in the T8 group that actually sells the platform[8] has denied selling it in Delaware, and (3) the lack of submitted evidence that some Delaware-based financial institution is offering personalized credit or debit cards that appear to be based on the defendants' products. There is no reasonable basis to believe the discovery is likely to be productive. Thus, as to the T8 group, I will also deny the plaintiffs' request for jurisdictional discovery.

There is no personal jurisdiction pursuant to § 3104(c)(3) over five of the six CPI

---

[7] Thus, the present state of the record stands in stark contrast to that of *Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), in which the plaintiff "ha[d] gone beyond factual allegations, and ha[d] already made a prima facie case . . . that [the plaintiff] likely [had] substantial sales of its products in Delaware." *Id.* at 1323.

[8] Tactical 8 Technologies sells platforms. Bank Iowa Corporation does not.

defendants (all but CPI Card Group – Minnesota) and the T8 group. Thus, I do not need to consider whether the assertion of personal jurisdiction, on the present state of the record, would offend due process.

Since there is no personal jurisdiction over the five CPI group members and the two T8 group members, the District of Delaware is the wrong venue to bring this suit against them. *See* 28 U.S.C. § 1391(c); 28 U.S.C. § 1400(b). The CPI group concedes there is personal jurisdiction over each of its members in the District of Colorado. (D.I. 9, p. 14).[9] The T8 group concedes that there is personal jurisdiction over both of its members in the Northern District of Iowa. (D.I. 39, p. 13). The plaintiffs, at oral argument, agreed that they could have brought the case against the CPI group in the District of Colorado, and the case against the T8 group in the Northern District of Iowa (D.I. 86, p. 9). The plaintiffs further agreed that if the Court were to hold that it has no personal jurisdiction over the defendants, they would prefer to see the defendants' cases transferred rather than dismissed. (D.I. 86, pp. 81-82). I think it would be in the interest of justice to transfer the claims against these defendants to the District of Colorado and the Northern District of Iowa so that the merits of the claims of patent infringement can be adjudicated. *See* 28 U.S.C. § 1406(a).[10] I will enter such an order as to the T8 group as it is clear

---

[9] The record establishes that CPI Card Group – Colorado is subject to personal jurisdiction in Colorado. The record is not as clear in regard to the other members of the CPI group. Defendants The Members Group, Anheuser Busch, PSCU, and Neighbors each submitted sworn statements that they did not object to personal jurisdiction in the District of Colorado for purposes of this litigation. (D.I. 12, p.2; D.I. 13, p.2; D.I. 15, p.3; D.I. 16, p.2). As they have each also sworn that CPI is indemnifying them, their concession that wherever CPI Card Group – Colorado wants to litigate is agreeable to them is not surprising.

[10] I therefore do not need to decide whether transfer of these defendants pursuant to 28 U.S.C. § 1404(a) would be appropriate.

-10-

that the Northern District of Iowa is a "district . . . in which [this case] could have been brought" against the T8 group. While it is clearly the case that the District of Colorado is a "district . . . in which [this case] could have been brought" against CPI Card Group – Colorado, Inc., the record is not so clear that this is so in regard to the other CPI group members over which this Court does not have jurisdiction. It seems preferable from the standpoint of judicial administration to consult with the parties before entering any orders in relation to the CPI group members.

The other remaining issues concern CPI Card Group - Minnesota, Inc., which has requested severance and transfer to the District of Colorado. Personal jurisdiction over this defendant exists in the District of Delaware. It is not obvious from the record that the District of Colorado is a forum where this case "might have been brought." 28 U.S.C. § 1404(a). For purposes of transfer analysis, the record supports the conclusion that CPI Card Group – Colorado, Inc., is the main defendant in the CPI group, and thus it appears that it would be in the interest of justice to transfer the CPI Card Group – Minnesota, Inc., to the District of Colorado, but I do not think that is something I can do without additional factual support showing that such a transfer would be proper.

An appropriate order will be entered transferring the cases against both of the T8 defendants to the Northern District of Iowa. An appropriate order will be entered scheduling a conference with counsel relating to the CPI group defendants.